**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **Criminal No. SAG-21-0209** |
| | * | |
| **JULIAN GRAY** | * | |
| | * | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM OPINION</u>

On June 9, 2021, a grand jury returned an indictment against Julian Gray containing three counts: possession with intent to distribute controlled substances, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm and ammunition by a person with a prior felony conviction.  ECF 1.  Currently pending is Gray's Appeal of Detention Order ("the Motion"), ECF 24, which seeks reconsideration of the detention order issued by then-United States Magistrate Judge Deborah L. Boardman on July 26, 2021.  ECF 11.  The Government filed an opposition to the Motion, ECF 32, which Gray moved to strike as belated, ECF 33.[1]  Gray also filed a reply, 34.  This Court has also reviewed Gray's Presentence Investigation Report, ECF 23, and has listened to the argument counsel presented during the detention hearing before Judge Boardman.  *See* Loc. R. 105.6 (D. Md. 2021); *United States v. Martin*, 2020 WL 1274857, at \*3 (D. Md. Mar. 17, 2020) (finding "ample authority for the conclusion that the Court may decide [an appeal of a detention or release order] on the filings ... as opposed to a hearing.").  For the reasons that follow, Gray's appeal will be denied.

---

[1] While this Court declines to "strike" the Government's opposition, after reviewing the remainder of the record, this Court did not deem it necessary to review the Government's filing and has not done so.  The Motion to Strike, ECF 33, will therefore be denied as moot.

## I.      Procedural History

Upon Gray's initial appearance in court on July 14, 2021, the government sought his pretrial detention.  Judge Boardman held a detention hearing and ordered Gray's detention.  ECF 10 and 11.  Gray did not immediately appeal the detention order, but a number of factors have changed since his initial detention: (1) Gray has pled guilty to counts one and three of the indictment and is now pending sentencing, (2) Gray has been transferred from a medical facility, the Metropolitan Transition Center ("MTC") to standard pretrial detention at the Chesapeake Detention Facility ("CDF"), and (3) COVID-19 cases have surged in light of the highly transmissible Omicron variant.  Accordingly, on January 10, 2022, Gray filed the instant appeal, citing changed circumstances presented by the COVID-19 pandemic and his own health concerns.  ECF 24.  He both appeals Judge Boardman's pretrial detention ruling and requests temporary release pursuant to 18 U.S.C. § 3142(i).

## II.      Standard of Review

Pretrial detention and release are governed by the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141, *et seq.*  Under that statute, the government is permitted to seek pretrial detention of a defendant charged with drug trafficking and firearms offenses.  *Id.*  The BRA instructs the Court to seek "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id.* § 3142(c)(1)(B).  However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial."  *Id.* § 3142(e)(1).  Where, as here, a detention ruling

is based on a defendant's danger to the community, the Court must make the finding by clear and convincing evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

(1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including –

    (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Because Gray has now pled guilty to the drug trafficking offense, his case is now governed by § 3143(a)(2), which provides:

The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless –

(A)(i)    the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

(ii)    an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B)     the judicial officer finds by clear and convincing evidence that the person is
not likely to flee or pose a danger to any other person or the community.

## III.    Analysis

In the Motion, Gray appeals Judge Boardman's detention order, which requires application of § 3143(a)(2).  ECF 24.  In the alternative, Gray also asks this Court to consider his temporary release under § 3142(i).  *Id.*  This Court will address each argument in turn.

### A.   Appeal of Detention Order

As described above, § 3143(a)(2) is not a statute that provides discretion to the Court.  It requires that the judicial officer "shall order" a defendant detained unless very specific circumstances are met, including one of two circumstances not met here.  Gray has pled guilty, so there is no likelihood that a motion for acquittal or new trial will be granted.  And his advisory guideline range is 60-71 months.   While the Government has not yet made its sentencing recommendation, there is no reasonable likelihood that it will recommend a sentence other than a term of imprisonment, particularly given its opposition to Gray's pretrial release.  This Court, then, cannot grant release under § 3143(a)(2).

### B.   Temporary Release

Section 3142(i) permits "the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason."  This Court is cognizant of the fact that critical defense functions have been hindered throughout the pandemic, particularly during times of heightened viral activity causing restricted visitation and movement in the detention facilities.  The effects of this reality, however, are best ameliorated through liberal granting of defense requests for extension of time to allow adequate

opportunity for sentencing preparation when circumstances allow. Thus, at least at this time, temporary release is not justified on the basis of a need to prepare Gray's defense.

This Court must also assess whether there is "another compelling reason" justifying temporary release under § 3142(i). Prior to the COVID-19 pandemic, this provision was "sparingly" used to justify temporary release for specific medical treatments, such as cancer surgery or chemotherapy. *See, e.g.*, *United States v. Hamilton*, 2020 WL 1323036 (E.D.N.Y. March 23, 2020) at * 2. Courts have been considering and employing § 3142(i) in a more widespread fashion in the context of COVID-19. In fact, in *United States v. Creek*, Criminal No. 20-4251 (4th Cir. Apr. 15, 2020), ECF 402, the Fourth Circuit elucidated specific factors this Court must consider when weighing these § 3142(i) motions, including in the first instance "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i)." "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, 19-cr-00158-PX-9, slip op. at 5-6 (D. Md. Apr. 29, 2020) (emphasis in original).

Turning first to the specificity of Gray's COVID-19 concerns, the medical records reflect that he has been diagnosed with a number of medical conditions believed to increase the risk of serious complications from the COVID-19 virus. For the majority of his time in pretrial detention, Gray was housed in the MTC medical unit to facilitate his receipt of methadone therapy. In December, 2021, the facility tapered Gray's methadone doses to remove him from the therapy and

allow him to be moved to CDF.  During his stay at MTC, however, he received frequent medical checks and had regular access to treating practitioners.  Nevertheless, his medical records reflect general good health and a limited need for any medical care, suggesting that his chronic conditions are well-controlled.

Per the representations of his counsel, he has also received two doses of an approved COVID-19 vaccine, though he had not yet received a booster vaccine as of the date his appeal was filed.  This Court does not in any way intend to minimize the seriousness, or potential for severe complications, associated with any COVID-19 diagnosis and certainly has no way to predict the outcome should any individual be affected.  It is well-established, however, that the COVID-19 vaccines confer significant protection against serious illness and death from the virus, even amongst medically vulnerable individuals.

Gray makes other arguments about the generalized conditions at CDF for all detainees, including the type of masks the facility is providing to its inhabitants.  This Court does not doubt or dispute that persons in a congregate living situation are at increased risk of viral transmission. Further, this Court understands that serious questions have been raised about whether the protective measures at CDF could be improved.  The overall conditions at CDF, however, are at issue in separate litigation and are not appropriately determined in the context of this detention dispute.  *See Hernandez*, 19-cr-00158-PX-9, slip op. at 5 (stating, in a similar context, "[a]lthough the pendency of that action does not restrict this Court from assessing Defendant's motion under the Bail Reform Act (which, necessarily, requires an individual assessment of Defendant's situation to include COVID-19 risk), some recognition of principles of comity is appropriate to promote the twin goals of avoiding 'an unnecessary burden on the federal judiciary' and preventing 'the embarrassment of conflicting judgment.'" (*quoting In re Naranjo*, 768 F.3d 332, 348 (4th Cir.

2014) and *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979))). Thus, it would be inappropriate for this Court to consider the situation at CDF more broadly, other than in the context of the simple application of the BRA to Gray. Ultimately, due to his health conditions and his congregate living setting, Gray has established that he is presently at an increased risk of serious complications from the COVID-19 virus by virtue of his continued detention at CDF.

However, this Court must balance that increased risk with the danger that Gray would pose to the community if he were to be released. Gray committed the instant offenses while on parole. His prior history of failure to comply with court-imposed release conditions does not suggest that his compliance with this Court's conditions could be assured. His proposed third-party custodian works full-time, meaning that there would be long windows of her absence from the residence. This Court also notes that Gray was residing with the proposed third-party custodian when he committed the serious offenses of conviction.

The danger Gray poses to the community, moreover, is great. He has pled guilty to possession of 1090 gel caps of fentanyl, a particularly pernicious and deadly controlled dangerous substance. He also pled guilty to possession of a firearm loaded with twelve live hollow-point rounds. He has a prior conviction for murder, and was on parole at the time he committed the instant offense. Even in light of the current pandemic, then, the danger Gray poses to the community outweighs the danger posed to him by his continued detention. He has not therefore met his burden to establish a compelling reason justifying his temporary release.

**IV.     CONCLUSION**

For the reasons stated herein, Gray's Appeal of Detention, ECF 24, is DENIED, and

Gray's Motion to Strike, ECF 33, is DENIED AS MOOT.

Dated: January 31, 2022                                          /s/
                                                    _____
                                                    Stephanie A. Gallagher
                                                    United States District Judge